UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM L. ANDERSON**, | ) | Case No. 5:09 CV 0671 |
| | ) | |
| Petitioner, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **WARDEN, GRAFTON** | ) | |
| **CORRECTIONAL   INSTITUTION** | ) | (Regarding ECF #1, 14) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Before the undersigned is William Lamont Anderson's March 2009 petition for writ of habeas corpus under 28 U.S.C. §2254, and the warden's motion to dismiss (ECF # 1, 14). This is Anderson's **second habeas petition**. Like his prior March 2008 petition,  Anderson  challenges the July 20, 2005 criminal judgment from the Summit County, Ohio Court of Common Pleas sentencing him to life imprisonment (plus three years for firearm specification) on the jury's findings of guilt for aggravated murder with firearm specification, tampering with evidence, having a weapon while under disability, and possession of cocaine. See *State v. Anderson*, 2006 WL 2788450, 2006-Ohio-5048 (Ohio App. 9 Dist.).[1]  Anderson's victim, Dewayne Ball, was  shot execution-style in the arm, head, and chest as Ball was exiting his vehicle.  The victim's girlfriend was in the car and identified Anderson as the perpetrator following a short pursuit which led to Anderson's capture behind a trash dumpster.

Anderson had  timely appealed this judgment to the state district court of appeals on August 22, 2005,  but his direct appeals concluded with the Ohio Supreme Court's dismissal of appeal on

---

[1]  A cocaine trafficking charge was nol-prossed before trial. *Anderson*, 2006 WL 2788450, at  ¶ 4.

2

March 14, 2007 for lack of a substantial constitutional question. See *Id.,* and *State v. Anderson*, 113 Ohio St. 3d 1414, 862 N.E.2d 843, 2007-Ohio-1036 (Table 2007).

On March 7, 2008, Anderson timely filed his first petition for federal habeas corpus within the "1-year period of limitation" following the conclusion of direct review under 28 U.S.C. §2244(d)(1)(A). [2]  This first petition, however, was accompanied by a motion for stay and abeyance pending the outcome of pending state proceedings relating to his 2005 conviction.  (See *Anderson v. Hudson*, Case No. 5: 08 CV 0601(N.D. Ohio)). Anderson had conceded at that time that this first habeas petition was a mixed petition of exhausted and unexhausted claims.  Anderson was ordered to file status reports every 60 days, but he failed to comply. As a result on October 22, 2008, this first petition was dismissed without prejudice. (08 CV 0601, ECF # 5).  Anderson moved for relief from

---

[2] 28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

3

judgment under Fed. R. Civ. P. 60(b) on December 5, 2008, pointing out that the state appellate court had granted him delayed appeal on August 18, 2008. (*Id.*, ECF # 6-7). This motion was denied  on February 23, 2009, and this precipitated Anderson's second habeas petition in March 2009. (*Id.*, non-document order dated Feb. 23, 2009).

Anderson's second petition for federal habeas corpus  was received by the Court on March 25, 2009, but considering Anderson's certification that he placed it in the prison mailing system on **March 20, 2009**, that date is deemed the filing date under the extension of the "prison mailbox rule" to habeas corpus petitions from *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). See *Miller v. Collins*, 305 F.3d 491, 497-498 & n. 8 (6th Cir. 2002). The warden contends that the second habeas corpus petition is untimely and must be dismissed as filed beyond the 1-year statute of limitations contained in 28 U.S.C. §2244(d)(1)(A), and further that federal collateral review of grounds four through eight is barred due to procedural default.  The warden is correct on both accounts.

*Second Petition is Time-barred:*

Anderson's conviction became "final" for purposes of §2244(d)(1)(A) on **June 12, 2007**. This date follows the Ohio Supreme Court's March 14, 2007 dismissal of the direct appeal by 90 days to allow for an application for *certiorari* to the United States Supreme Court. See *Clay v. United States,* 537 U.S. 522, 528 n.3, 123 S.Ct. 1072, 1077 n.3 155 L.Ed.2d 88 (2003)(" The Courts of Appeals have uniformly interpreted 'direct review' in § 2244(d)(1)(A) to encompass review of a state conviction by this Court.")(citing *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000)(citing *Isham v. Randle*,

4

226 F.3d 691, 694-95 (6th Cir. 2000), *cert. denied*, 531 U.S. 1201 (2001)).  Fed. R. Civ. P. 6(a) applies to federal time computation, so  "the day of the act, event, or default from which the designated period of time begins to run shall not be included." *Bronaugh v. Ohio,*  235 F.3d at 285. Accordingly, the 1-year period of limitation commenced to run on Wednesday, **June 13, 2007**, and unless tolled, Anderson had until **June 13, 2008** to timely submit his second petition.  The deemed filing date of the second habeas petition on  March 20, 2009, however, is nearly nine months  after the "1-year period" of §2244(d)(1)(A), expired.

Anderson initially had filed a timely habeas petition in March 2008, so the exceptions under §2244(d)(1)(B)-(D) have no relevance to this matter.  The sole question presented is whether the pending state proceedings sufficiently tolled the running of the period of limitation under §2244(d)(2) as "properly filed applications for State post-conviction or other collateral review" to extend the filing period from June 13, 2008, through March 20, 2009.

The statute of limitation is tolled under §2244(d)(2) while  state post-conviction or collateral review proceedings  are "pending." See *Lawrence v. Florida*, 549 U.S. 327, 329, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).  On **January 22, 2008**, Anderson filed a motion for leave to file a delayed motion for  new trial pursuant to Ohio Crim. R. 33(B) with the state trial court.  (Respondent's Ex. 12, ECF # 14-2). On **March 11, 2008**, the trial court denied the motion, finding Anderson had not established by clear and convincing evidence that he was unavoidably prevented during the preceding two and one-half years from meeting Rule 33(B)'s 14 day motion filing deadline. (Respondent's Ex. 15, ECF # 14-2). The trial court pointed out that Anderson had a court-appointed attorney on his

appeal who had obtained a trial transcript, contrary to Anderson's claim that his indigency prevented him from obtaining a trial transcript.

What had transpired in the state courts over the interim is a series of procedural missteps. Anderson attempted to appeal the state trial court's March 2008 order, but he missed Ohio App. R. 5(A)'s 30-day deadline. He filed a notice of appeal on **April 14, 2008**, and after the State objected to the untimely appeal, he filed a motion for leave to file a delayed appeal on **April 24, 2008**. On **May 13, 2008**, the state appellate court rejected the appeal, but without prejudice to later resubmission, explaining that App. R. 5(A)(2) requires that the motion for leave be filed "concurrently" with the filing of the notice of appeal, and Anderson had not followed this rule. (Respondent's Ex.16-21, ECF # 14-2).

Anderson tried again on **May 27, 2008**, with both notice and motion filed concurrently. However, this appeal was dismissed on **May 30, 2008**, by the appellate court's magistrate for the reason that "[a]ppellant's appeal, however, was terminated on May 13, 2008." (Respondent's Ex. 22-24).

Undaunted, Anderson again attempted to perfect a delayed appeal on **August 6, 2008**,[3] and this third attempt was successful and a delayed appeal was granted on August 18, 2008, from the trial court's March 2008 order. Success was short-lived, though, because on **December 22, 2008**, the

_____

[3]  The warden refers to August 6, 2008 as the filing date for the delayed appeal. In fact, the Notice of Appeal bears a filing stamp date of August 5, 2008 and the accompanying Motion for Delayed Appeal bears an August 6, 2008 filing stamp date. (Respondent's Ex. 25, 26, ECF # 14-2).

6

appeal was dismissed pursuant to App. R. 18(C) for failure to file a brief on the issues. The state appellate court explained  that Anderson's  brief had been due November 26, 2008. (Respondent's Ex. 26-31, ECF # 14-2).


Anderson then  moved for reconsideration. First, however,  he mistakenly filed his motion for reconsideration with the trial court. He rectified this error on **February 11, 2009**. The state appellate court's magistrate ordered the appeal dismissed on **February 24, 2009** because the motion "was filed with this Court by a non-attorney acting on appellant's behalf. A non-attorney is not permitted to represent another party in a legal proceeding." (Respondent's Ex. 36, Ex. 9-12 ECF # 14-4). However, notwithstanding the state magistrate's ruling with respect to this matter, on **March 2, 2009**, the appellate judges denied the motion for reconsideration as untimely under App. R. 26(A)'s 10 day filing deadline when more than one month had passed between the December 22, 2008 order and the February 2009 motion for reconsideration. (Ex. 13 within Ex. 36, ECF # 14-4).


On **April 24, 2009**, Anderson sought a delayed appeal to the Ohio Supreme Court regarding the December 22, 2008 dismissal for Anderson's failure to file his brief on appeal. On **June 17, 2009**, leave to appeal was denied. (Respondent's Ex. 37-39, *State v. Anderson*, Case No. 2009-0761 (Ohio Sup. Ct.).


*January 2008 Motion for New Trial was untimely and  did not toll 1-year period:*

7

Nearly seven months of the 1-year period passed before Anderson filed his Ohio R. Crim P. 33(B) motion for new trial with the Court of Common Pleas on **January 22, 2008**. The applicable portion of Rule 33(B) requires that a motion for new trial must be made within fourteen days of verdict or decision "unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial. . . ." The trial court on March 11, 2008, found Anderson had not shown unavoidable prevention to excuse a two and one-half year delay.

The warden contends that a Rule 33 motion for new trial constitutes a state post-conviction proceeding for purposes of §2244(d)(2), and therefore does not toll the running of the period of limitation unless it is "properly filed." Anderson's motion was dismissed for untimeliness, and because of this, the warden correctly argues that it was not "properly filed." [4] "Proper" filing includes "the time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000); *Pace v. DiGuglielmo*, 544 U.S. 408, 414-17, 125 S.Ct. 1807, 1813-15,161 L.Ed.2d 669 (2005)(State post-conviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)); *Allen v. Siebert*, 552 U.S. 3,7, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007)(same); *Vroman v. Brigano,* 346 F.3d 598, 603 (6th Cir. 2003). The state courts are the arbiters of the state's time rules. *Vroman,* 346 F.3d at 603; *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Consequently, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Allen v. Siebert,* 552 U.S. at 7, 128 S.Ct. at 4(quoting *Pace*, 544 U.S., at 414, 125 S.Ct. 1807, 1812 (quoting *Carey v. Saffold*, 536 U.S., 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)(alteration in original)).

---

[4] Only pre-appeal motions for new trial under Ohio Crim. R. 33 are part of the direct appeal. See *Pudelski v. Wilson,* 576 F.3d 595, 610 (6th Cir. 2009).

8

*No Tolling for March 2008 Habeas Corpus Petition:*

Although the warden glosses over this point, Anderson's first federal habeas corpus petition filed in March 2008 did not toll the running of the period of limitation since a §2254 petition is not an "application for state post-conviction or other collateral review" to allow for tolling under §2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 281 (2001).

*No Tolling for Improperly filed April 2008 Appeals:*

The warden next argues that Anderson's subsequent appellate efforts were not "properly filed" since they were dismissed as untimely. The **April 14, 2008** notice of appeal and **April 24, 2008** motion for leave to file delayed appeal were dismissed due to a combination of untimeliness and improper form. Improper form of a document also negates "proper" filing. See *Artuz*, 531 U.S. at 8.

*Tolling during May 2008 Appeal:*

On the other hand, the **May 27, 2008** notice of appeal and motion for leave to file delayed appeal in the Ohio courts were not dismissed due to facial deficiency as to form or untimeliness. The reason that appeal was dismissed was the appeal had "terminated on May 13, 2008." This appears to be a procedural ruling. "[A]n application for state postconviction review may considered 'properly filed' . . . even if the application fails to comply with state-law **procedural** requirements that preclude relief on the merits of the applicant's claims. *(emphasis supplied)" Pace v. DiGuglielmo,* 544 U.S. at 424, 125 S.Ct. at 1818(citing *Artuz*, 531 U.S. at 8). According to the U.S. Supreme Court, whether a document is properly filed is a matter of *delivery* to the court, and the U.S. Supreme Court has limited defects in delivery to matters of forum, form, fee, and time limit as distinguished from the

9

"claims" contained within the document.  See *Artuz* , 531 U.S. at 9, 121 S.Ct. at 364 ("But in common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."); *Pace*, 544 U.S. at 417, 125 S.Ct. at 1814("For purposes of determining what are 'filing' conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of "rule of decision" procedural bars at issue in *Artuz*, which go to the ability to obtain relief.").  Whether the claims contained in the document are meritorious and free of procedural bar, are separate issues from "proper" filing in the very limited sense of delivery. See  *Artuz*, 531 U.S. at 8.


The state appellate court's ruling that the appeal was previously "terminated"  may be viewed as an application of the state *res judicata* principle or analogous to such a ruling. This is a type of procedural ruling which extends well outside of delivery deficiency to the question of  the ability to obtain relief.   The May 27, 2008 filings were "proper" despite subsequent dismissal on *res judicata* grounds.  See *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 797-98 (N.D. Ohio 2007). Accordingly, the running of  1-year period of limitation tolled for 3days from  **May 27 to May 30, 2008**, while that matter was pending in state court. The statute resumed running on May 31, 2008 to extend the balance of remaining time for three days until **June 18, 2008**. (June 13, 2008 fell on a Friday and the governing rule excluded weekends).


*Not Tolling or Resetting  for August 2008 delayed appeal and Subsequent Proceedings:*

10

Anderson took no action following the dismissal of his May 2008 appeal until he filed a motion for delayed appeal on **August 6, 2008** from the trial court's March 11, 2008 denial of his motion for new trial. However, by that time the "1-year period" had expired on **June 18, 2008**. The warden argues that applying *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003), to these circumstance, this second attempt at delayed appeal had no effect on the period of limitation because it had already expired in June 2008.

That is correct, but how delayed appeals figure in the calculation has been materially affected by the decision in *Jimenez v. Quarterman*, 555 U.S. -, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), and merits some discussion. Prior to *Jimenez*, an all-inclusive rule evolved in the Sixth Circuit that a delayed appeal did not restart or retrigger direct review. See *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006). *Jimenez* has placed this rule in doubt.

The case on which the warden relies, *Vroman v. Brigano,* does not apply to these circumstances. That case was decided during vigorous debate over Ohio's appellate reopening procedure under Ohio App. R. 26(B). The scope of the issue in question in *Vroman* was narrow and not directly applicable to Anderson's procedural circumstances. Digressing into a discussion of the warden's argument, at that time *Vroman* was decided, circuit case law had nearly, but not quite, settled on the position that applications to reopen appeals under Ohio App. R. 26(B) were part of the post-conviction or collateral review process governed under §2244(d)(2), which could toll but not renew the one-year period. But see *Lambert v. Warden, Ross Correctional*, 81 Fed. Appx. 1 (6th Cir. Sep. 2, 2003)(§2244(d)(1)(A) began to run anew with Rule 26(B) application). Not until *Lopez v.*

11

*Wilson*, 426 F.3d 339, 352 (6th Cir. 2005)(*en banc*), *cert. denied*, 547 U.S. 1099 (2006), was the question resolved with finality in favor of governance under §2244(d)(2). Nonetheless prior to *Lopez,* a majority of judges in the circuit generally favored no restarting or retriggering of the one year period of limitation under §2244(d)(1)(A), regardless of whether the  reopening fell within a procedure deemed to be either direct or collateral, (but *Lambert* and the dissenting opinions in *Lopez* expressed the opposite view). See *Bronaugh*, 235 F.3d at 285-86; *White v. Schotten*, 201 F.3d 743, 752-53 (6th Cir. 2000).

The belief that it was unnecessary to distinguish between  direct review from collateral review carried over into *DiCenzi*, and its holding that "a  motion for delayed appeal, even if granted, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending." *DiCenzi v. Rose,*  452 F.3d at 468.  *DiCenzi* is an extension of *Searcy v. Carter*, a case which bears some similarity to the matter at hand. See *id*., 246 F.3d 515 (6th Cir. 2001). There a petitioner appealed his convictions to an Ohio District Court of Appeals with partial success, and after this appellate effort, petitioner moved for new trial and completed the state appellate process by a motion for delayed appeal to the Ohio Supreme Court.  *Searcy*, 246 F.3d at 516-18. The district court found the petition untimely by categorizing the motion for new trial under §2244(d)(2). The Sixth Circuit was not so clear.  It noted uncertainty in Ohio law over whether delayed appeals should be treated as direct appeals, and noted that Ohio's provision for delayed appeals to the Ohio Supreme Court did not apply to appeals involving post-conviction relief (an indication that the delayed appeal was part of the direct appeal process). *Searcy* found no need to distinguish between direct review and collateral and rested on reasoning borrowed from *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 898 (S.D.N.Y), that:

12

> Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*Searcy v. Carter,* 246 F.3d at 519.


However, the laces are no longer neatly tied following *Jimenez.* The expression in *Raynor* and *Searcy* of all-encompassing principle did not align with the language of the statute.  The Supreme Court  in *Jimenez v. Quarterman*, 555 U.S. -, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), addressed the matter of  delayed appeals and held that when a state appellate court grants a motion for delayed *direct* appeal, the 1-year period of §2244(d)(1)(A) is reset.  To put this holding in *Raynor*'s and *Searcy*'s terms, the one year period of limitation under §2244(d)(1)(A) can indeed become "meaningless."  However, the general rule continues to apply that State post-conviction or collateral review under §2244(d)(2) does not reset the period of limitation under *Jimenez* governance.  See *De Jesus v. Acevedo*, 567 F.3d 941, 943-44 (7th Cir. 2009). So, it is now important to distinguish between whether the state review procedure is direct review or collateral review.


With respect to motions for new trial under Ohio Criminal Rule 33, the Sixth Circuit has recently announced its position "that when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding." *Pudelski v. Wilson*  576 F.3d 595, 610 (6th Cir. 2009). Anderson's direct appeal had  been filed and concluded by March 14, 2007. See *State v. Anderson*, 113 Ohio St. 3d

13

1414, 862 N.E.2d 843, 2007-Ohio-1036 (Table 2007). His motion for new trial was not filed with the trial court until January 22, 2008.  (Respondent's Ex. 12, ECF # 14-2). In line with the rule from *Pudelski*, Anderson's post-appellate motion for new trial was a part of the state's collateral review process. Unlike direct review, a  motion for new trial does not affect the finality of conviction.  See *Johnson v. United States*, 246 F.3d 655, 658 (6th Cir. 2001).  Accordingly, the grant of a delayed appeal as an extension of the state's collateral review process with respect to a post-appellate motion for new trial falls under the conventions of §2244(d)(2), and does not reset the one year period.


    Likewise, Anderson's April 2009 delayed appeal to the Ohio Supreme Court following the December 22, 2008 dismissal of his appeal did not reset the one-year period. Under the state procedural mechanism, the Ohio Supreme Court has jurisdiction over timely appeals which are exercised within 45 days of entry of the state appellate court's decision. See Ohio S.Ct. Prac.R. II §2(A)(1).  The Ohio Supreme Court may in its discretion take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. II §2(A)(4)(a). Unlike *Jimenez*, the state court denied the untimely appeal.  So, whether the requested delayed appeal fell under direct or collateral review became irrelevant. The one-year period was not reset by court action granting a delayed appeal.


*Equitable Tolling:*

    Anderson had filed a prior timely petition and arguably could be entitled to equitable tolling so that his untimely second petition may be reviewed on the merits.  "[T]he doctrine of equitable tolling allows a federal court to toll a statute of limitations when, 'a litigant's failure to meet a

14

legally-motivated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005), quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).[5]  Anderson bears the burden of establishing entitlement to this form of tolling.  See *Jurado v. Burt,* 337 F.3d 638, 642 (6th Cir. 2003)(citing *Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *Keenan*, 400 F.3d at 420). Anderson, though, has not specifically requested equitable tolling, but he does argue excusable neglect because  he had not received notice that the Court had granted the stay of his first petition.

On May 6, 2008, Anderson's motion for stay and abeyance from his first habeas petition was granted and notice was delivered "by other means" to his address at Mansfield Correctional Institution (See *Anderson v. Hudson*, Case No. 5:08CV0601, ECF #4, *Anderson v. Warden*, Case No. 5:09CV0671, Motion Ex. 5, ECF # 17 ).  (Later on December 5, 2008, Anderson filed a change of address for his mail to be sent to Grafton Correctional Institution. (*Id.*, ECF # 8)).  The dismissal of the prior petition on October 22, 2008  was due to Anderson's failure to file status reports as instructed by the Court.

Anderson explains that he did not receive the May 2008 order with its instruction to file status reports at 60 day intervals. However, the issue whether Anderson had received notice of the

---

[5]  In determining whether to allow equitable tolling, the Court must consider the *Andrews* factors:  petitioner's lack of notice of the filing requirement; petitioner's lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the Respondent and the petitioner's reasonableness in remaining ignorant of the legal requirements for filing his claim.  *Dunlap*, 250 F.3d at 1008, citing *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988).  However, "this list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d at 605; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004).

Court's May 2008 ruling was argued in Anderson's December 5, 2008 Fed. R. Civ. P. 60(b) motion

for relief from judgment in response to the dismissal of his first petition. (See Motion Ex. 6, ECF #

17-2, 5:09CV0671). That motion was denied by the Court in Case No. 5:08CV0601 on February 23,

2009, and no appeal was taken nor reconsideration requested.  Reconsideration at this time of

Anderson's excusable neglect argument has been collaterally estopped by claim preclusion resulting

from this prior Court ruling.  See *Schreiber v. Philips Display Components Co.,* 580 F.3d 355, 367-

68 (6th Cir.2009). [6]


   All  elements of collateral estoppel are present:  the same claim was raised in the prior Rule

60(b) motion; the opposite decision would have produced a different outcome; there had been a final

judgment on the first habeas petition; and  Anderson obviously had the opportunity to litigate the

issue that he raised.  Fed. R. Civ. P. 41(b), is clear that dismissals due to failure to prosecute or

comply with court orders are dismissals "on the merits." [7]  But see *Cobbins v. Tennessee Dept. of*

---

   [6]  The elements of collateral estoppel require that:

   (1) the precise issue raised in the present case must have been raised and actually litigated in the prior
   proceeding; (2) determination of the issue must have been necessary to the outcome of the prior
   proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the
   party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in
   the prior proceeding.

*Schreiber v. Philips Display Components Co.*  580 F.3d 355, 367 (6th Cir. 2009)(quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir.2007).


   [7] Fed. R. Civ. P. 41(b) **Involuntary Dismissal; Effect**. If the plaintiff fails to prosecute or to comply with these
rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states
otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction,
improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

*Transp.,* 566 F.3d 582, 589 (6th Cir.  2009)("The judgment was not a dismissal on the merits, but a dismissal for failure to prosecute.").

As it now stands, Anderson's due diligence argument is precluded and the only other potential factor presenting itself in these circumstances of  "[a]bsence of prejudice is a factor to be considered only after a factor that might justify tolling is identified."  *Allen v. Yukins,* 366 F.3d 396, 404 (6th Cir. 2004)(quoting  *Vroman*, 346 F.3d at 605). Consequently, equitable tolling should not be granted.

*Procedural Default of Grounds 4 through 8:*

The warden argues that grounds 4 though 8 are a blend of those presented on direct appeal and those presented with his motion for new trial. Grounds one through three relate to matters in the direct appeal whereas grounds four through eight repeat allegations made in the motion for new trial. The warden contends that because the motion for new trial was dismissed as untimely, federal collateral review is barred.

The governing rule is simple in statement but complex in application. "When a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bonilla v. Hurley,*  370 F.3d 494, 497 (6th Cir.2004), *cert. denied*, 543 U.S. 989 (2004), quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 109 S.Ct. 2546, 115 L.Ed.2d 640(1991); and see *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1592,

17

146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006);

*Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971).

 

The  warden however merely assumes that Ohio Crim. R. 33 is an independent and adequate

state procedural rule. [8]  The warden, citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004),

acknowledges that it is his burden to demonstrate that the state procedural rule is "firmly established

and regularly followed."  But the warden raises a tangential argument that Rule 33(B)'s fourteen day

time limit is an adequate ground because the state interest in finality is well-recognized.   Finality

is a well-recognized principle, but this reasoning has no relation to whether Ohio's fourteen day time

limit under Rule 33(B) is  firmly established and regularly followed.

This is certainly the correct conclusion.  A state procedural ground must be both independent

of the federal question presented and adequate to support the state court's judgment of default in the

state court.  *Lambrix v. Singletary*, 520 U.S. 518, 522, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Lee*

*v. Kemna*, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002).  The question of

---

[8]  Respondent's arguments for  procedural default only succeed if the state procedure satisfies the standards set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986):

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must decide whether the state courts actually enforced the state procedural sanction. Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim." The fourth factor, whether the petitioner has established cause for his failure to follow the rule and actual prejudice from the alleged constitutional error, applies when the first three have been established (citations omitted).

 *See Jells v. Mitchell,* 538 F.3d 478, 488 (6th Cir. 2008); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); and see *Beuke v. Houk,*  537 F.3d 618, 630 (6th Cir. 2008).

18

adequacy of the state procedural rule , "is itself a federal question." See *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Lee*, 534 U.S. at 375.

A state procedural rule which grants unfettered discretion to allow inconsistent outcomes or permits unexplained application is not an adequate state rule. See *Deitz v. Money,* 391 F.3d at 811 (Ohio App. R. 5(A) discretionary); *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir.2002)("unfettered discretion"); *Buell v. Mitchell,* 274 F.3d 337, 350 (6th Cir. 2001) ("decisions denying Buell's motion for delayed reconsideration offered little explanation for why Buell's delayed motion was denied."); *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 233-34, 90 S.Ct. 400, 403, 24 L. Ed.2d 386 (1969)(state rule was inconsistently applied); *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (unexplained application of state procedural rule). On the other hand judicial discretion in itself does not invalidate a rule if the discretion is exercised along clear and articulated standards. See *Gutierrez v. Moriarty*, 922 F.2d 1464, 1470 (10th Cir. 1991).

The state appellate court carefully explained its reasoning behind its findings for lack of Anderson's demonstration of unavoidable prevention. The decision noted the first part of Ohio Crim. R. 33(B)'s bifurcated procedure and found Anderson failed to show that he was unavoidably prevented from moving for new trial for more than 2½ years due to his alleged inability to secure a copy of the trial transcript. (Respondent's Ex. 15, ECF # 14-2). Review of state law leads to the conclusion in Anderson's case the rule was firmly established and regularly followed. [9]

---

[9] Magistrate Judge William H. Baughman noted in *Moore v. Brunsman*, 2010 WL 425055, at *15 (N.D. Ohio Jan. 26, 2010), that "[i]n *Matthews v. Ishee*,[486 F.3d 883 (6th Cir.2007)] the Sixth Circuit recently assumed without deciding that an untimely-filed motion under Ohio Rule 33 would constitute a procedural default unless the petitioner could show cause for the untimeliness and prejudice from failure to reach the constitutional claim.(footnotes omitted)"

First, Ohio Crim. R. 33(B) provides an explicit standard for permission to file untimely motions for new trial  only  "by clear and convincing evidence that the defendant was unavoidably prevented from filing his motion for a new trial . . . within the time provided herein."

> Crim. R. 33(B) contemplates a bifurcated procedure:
>
> (1) a motion for leave to file a delayed motion for new trial supported by evidence demonstrating that the movant was unavoidably prevented from ascertaining the ground sought to be asserted by way of motion for new trial within fourteen days after the rendering of the verdict; and
>
> (2) if the motion be granted, the filing within seven days of the actual motion for new trial properly supported by affidavit demonstrating the existence of the grounds for the motion."

*State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (1984).

Second, "the application of Crim. R. 33(B) must be undertaken against the backdrop of Crim. R. 1(B), which states:

> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay.

*State v. Berry,*  2007 WL 1377036, at * 8 (Ohio App. 10 Dist.)(quoting *State v. York,* 2001 WL 332019, at *3 (Ohio App. 2 Dist.)). And third, the threshold for unavoidable delay as interpreted in state case law is remarkably high:

> [A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.

20

*State v. Lordi ,*149 Ohio App.3d 627, 634, 778 N.E.2d 605, 610 (2002)(quoting *State v. Walden*, 19 Ohio App.3d at 146, 483 N.E.2d 859).

Consequently,  the appropriate meters for judicial consideration are narrow, and, to borrow the term from *Hutchison v. Bell*, the discretion is "fettered." [10] The standards for consideration of delayed motions for new trial are clear, and allow minimal discretion, while enabling facile appellate oversight over the decision to allow or disallow.

Given the existence of an adequate and independent state procedural rule, federal review is barred under *Maupin* absent cause and prejudice, and Anderson has not demonstrated either of these factors, nor actual innocence. See *Bonilla v. Hurley,* 370 F.3d at 497; *Maupin v. Smith*, 785 F.2d at 138; *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(actual innocence means new evidence of "factual innocence not mere legal insufficiency.").

### *CONCLUSION AND RECOMMENDATION*

The warden's motion to dismiss should be granted due to both  the untimeliness of petitioner's second petition and procedural default of the fourth through eighth grounds. (See ECF # 14). Petitioner, William Lamont Anderson, has not demonstrated that he is in custody pursuant to a

---

[10] See *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir.2002); *Deitz v. Money*  391 F.3d 804, 811 (6th Cir. 2004)

21

judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2). There has been no demonstrated need for an evidentiary hearing.  It is recommended that this application for habeas corpus be denied and dismissed in its entirety. (See ECF #1).

s/James S. Gallas

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).